[Cite as *Hagan v. Cleveland Times Square Holdings/Six Points L.L.C.*, 2013-Ohio-5128.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No. 99696

---

# TIMOTHY F. HAGAN, ET AL.

### PLAINTIFFS-APPELLEES

vs.

# CLEVELAND TIMES SQUARE HOLDINGS/ SIX POINTS L.L.C., ET AL.

### DEFENDANTS-APPELLANTS

---

## JUDGMENT:
### AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-681954

**BEFORE:** E.A. Gallagher, J., Celebrezze, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** November 21, 2013

**ATTORNEYS FOR APPELLANTS**

Gregory D. Seeley
Mary Davis
Seeley, Savidge, Ebert & Gourash
26600 Detroit Road
Suite 300
Cleveland, OH    44145


**ATTORNEYS FOR APPELLEES**

Timothy J. McGinty
Cuyahoga County Prosecutor

By:      Dale F. Pelsozy
Assistant County Prosecutor
8th Floor, Justice Center
1200 Ontario Street
Cleveland, OH    44113

EILEEN A. GALLAGHER, J.:

{¶1} Herrick Hudson, L.L.C. ("Hudson"), one of several named defendants in the above-captioned case appeals from the decision of the trial court that confirmed the award of the arbitration panel. Hudson argues the arbitration process was fundamentally flawed and that the annual rent set by the arbitration panel was below that which was established by the 1924 lease amendment. Finding no merit to the instant appeal, we affirm the decision of the trial court.

{¶2} This case involves a landlord-tenant dispute over the amount of rent due annually under the terms of a 99-year ground lease that had been renewed for another term. The subject property is on the northeast corner of East 9th Street and Prospect Avenue in the Gateway District of Cleveland. Hudson has a 50 percent interest in the ground lease as lessor. Cuyahoga County, by assignment, also has a 50 percent interest in the ground lease as lessor. Additionally, Cuyahoga County is the sole lessee under the ground lease. Thus, both Hudson and Cuyahoga County own a one-half undivided interest in the fee with Cuyahoga County acting as both landlord and tenant.

{¶3} The lease itself is a 99-year ground lease that was entered into in 1909.[1] The lease set the annual rent at $18,000 for the first three years, $20,000 for the following 12 years and $22,000 for the remainder of the 99-year lease. Among the

---

[1] A ground lease is a "lease that grants the right to use and occupy land." *N. Royalton City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 129 Ohio St.3d 172, 2011-Ohio-3092, 950 N.E.2d 955.

items contained in the lease, the parties agreed that if they were unable to agree upon and fix the value of the land, buildings and entire property before six months prior to the expiration of the 99-year term, then the lessors and the lessee would each select a resident freeholder of the city of Cleveland as an arbitrator, those two arbitrators would select a third freeholder of the city and the three so selected would proceed to fix the valuation and make their report to the parties.

{¶4} In 1924, the parties to the original lease amended the agreement to permit a renewal of the lease for "successive terms of ninety-nine years." The 1924 amendment conditioned the right and privilege of renewing the lease upon the lessee giving timely written notice to the lessors of its intention to claim such renewal. The amendment further provided that the rent for the succeeding term of the lease to be in excess of the current annual rent of $22,000.

{¶5} In conjunction with the impending expiration of the original 99-year lease, Cuyahoga County exercised its right as lessee to renew the ground lease for another 99-year term. As required by the lease, the lessors and the lessees attempted to "ascertain and fix the fair and reasonable net annual rentable value" of the premises for, and during, the renewed term. When Hudson and Cuyahoga County were unable to reach an agreement, Cuyahoga County initiated the process provided in the 1909 lease and its 1924 amendment.

{¶6} On January 15, 2009, the appellee Cuyahoga County, by and through its then board of county commissioners, commenced this action in order to obtain a

determination as to the amount of annual rent due and payable under the terms of the renewed ground lease. By an amended complaint, Hudson was joined as a defendant as an interested party in the lease. As part of the underlying action, the trial court upheld the validity of the ground lease in its grant of appellees' motion for summary judgment. The court further ordered the parties to proceed with the process established in the ground lease for selecting arbitrators tasked with the responsibility of determining the fair and reasonable rental value of the land subject to the ground lease.

{¶7} Once the parties selected a panel of three arbitrators, the trial court issued the following order:

> According to the ground lease, the arbitrators are to "ascertain and fix the fair and reasonable net annual rentable value of said premises for and during an ensuing term of ninety-nine (99) years, which rentable value shall be fixed with reference to the rentable value of premises of like dimension and location and with reference to the then current net income appropriate to premise[s] of like situation and value."

{¶8} The arbitration panel then proposed a procedure for determining the rental value by which the panel would select two qualified independent real estate appraisers who would independently provide information to assist the panel in determining the fair and reasonable annual rentable value of the land. Hudson objected to this methodology but the trial court approved the panel's proposal.

{¶9} On January 15, 2013, the arbitration panel filed its report with the trial court determining that the fair market and reasonable net annual rentable value of the land as of the base year 2008 was $65,325. The panel made a further provision for

periodic adjustments to be made every five years based on the Consumer Price Index.

The trial court adopted the arbitration panel's report and shortly thereafter, Hudson filed

the instant appeal.   Hudson raises the following assignments of error:

> The lower court erred where it deprived the parties of due process when it approved a so-called "arbitration" procedure that did not provide an opportunity for the parties to participate in any way.

> The court erred where it adopted the Arbitrators' Report when the appraisals upon which the report were based were so clearly flawed and inconsistent.

> The court erred where it adopted an annual lease amount below the floor established by the 1924 Lease Amendment.

{¶10}   In its first assigned error, Hudson argues the trial court "deprived the

parties of due process when it approved a so-called 'arbitration' procedure that did not

provide an opportunity for the parties to participate in any way."   We disagree.

{¶11}   In its brief, Hudson calls for an arbitration proceeding in the sense of how

that term and proceeding is understood today.   Hudson argues the trial court deprived it

of its opportunity to be heard and to present proofs and that the arbitration panel's

process failed to meet the definition of "arbitration" and thus, was inadequate.

{¶12}   The terms of the 1909 lease and its 1924 amendment did not call for an

adversarial arbitration as advanced by Hudson.   On the contrary, the lease and its

amendment simply called for three qualified resident freeholders to "ascertain and fix the

fair and reasonable net annual rentable value" of the land, with "the report and award of

any two of them being equally conclusive with that of all of them."   The lease did not

specify the process as to how these three freeholders were to ascertain the rentable value and there is no requirement that either the lessor or the lessee have a voice in that process.

{¶13} We note that when Cuyahoga County initially proposed to the trial court that this matter be resolved solely on the briefs of the parties, Hudson did not object. Although Hudson did object to the arbitration panel's proposal for determining the rentable value of the land, the trial court did not abuse its discretion in approving the panel's methodology. The arbitration panel proposed appointing two qualified, independent real estate appraisers to ascertain the fair and reasonable amount of annual rent for the ground-lease property. The panel's proposal fits within the guidelines provided in the 1909 lease and its 1924 amendment in that the three qualified resident freeholders, in this case, the appointed arbitrators, fix the fair and reasonable rentable value of the ground lease property. As stated above, the lease did not specify the methodology upon which the freeholders were to ascertain the rent for the land. As such, the arbitration panel's proposal was well within the parties' rights and the trial court did not abuse its discretion in approving the proposal.

{¶14} Hudson's first assignment of error is overruled.

{¶15} In its second assignment of error, Hudson argues the trial court erred in adopting the arbitrators' report because the appraisals upon which the report was based were flawed. Specifically, Hudson argues that the two appraisals have different effective dates (the Ritley Appraisal has an effective date of March 31, 2008, and the

Racek Appraisal has an effective date of December 1, 2012), that the appraisers erroneously assumed the subject parcel was vacant, that the appraisers erroneously concluded that the highest and best use for the property was a parking lot and that comparables were irrelevant and the appraisals ignored improvements to the property. We find no merit to Hudson's arguments.

{¶16} Hudson argues that because the Racek appraisal is dated December 1, 2012, there have not been two appraisals of fair market value as set forth in the arbitration panel's proposal. Hudson can establish no prejudice from the differing dates on the appraisals and acknowledges the existence of both appraisals. In fact, given that the later-dated appraisal listed a higher rental valuation than the 2008 appraisal, Hudson likely benefitted from these differing reports. Regardless, the appraisals were within ten percent of each other and we find no error with the listed effective dates.

{¶17} Hudson next argues that the appraisers erroneously assumed the subject parcel was vacant and undeveloped. Based on the 1909 lease and its 1924 amendment, the valuation that the appraisers were to make was restricted to determining the fair market and reasonable net annual rentable value of the land, i.e., the fee simple that was the subject of the ground lease and the only possessory interest at issue between Hudson and Cuyahoga County. Thus, it was appropriate for the appraisers to determine the fair rentable value of the land as if vacant without regard to what was or was not on the property.

{¶18} The remainder of Hudson's arguments relate to a fundamental

disagreement with the process used by the panel of arbitrators and the conclusions that they reached. While we understand and sympathize with Hudson's desire for an opportunity to present their arguments, the ground lease documents authorized the arbitrators to determine the fair market annual rentable value of the property without regard to the competing arguments of both Hudson and Cuyahoga County. This is especially relevant considering that it was Hudson and Cuyahoga County's inability to agree upon a fair market reasonable rental value that made the selection of three qualified arbitrators necessary. Regardless of Hudson's arguments, the process used by the appraisers was wholly appropriate to the task assigned to them and we find no error with the court's adoption of the panel's report.

{¶19} Hudson's second assignment of error is overruled.

{¶20} In Hudson's third and final assignment of error, Hudson argues the trial court erred when it adopted an annual lease amount below the floor established by the 1924 lease amendment. We disagree.

{¶21} The crux of Hudson's argument is that the 1924 lease amendment required the annual rent to be paid in "gold coin of the United States of or equal to the present standard weight and fineness" and, as such, based on the average price of gold, the minimum rent for the renewal period is $927,163.78.

{¶22} In 1933, the United States Congress passed a joint resolution that declared gold clauses to be against public policy, barring their inclusion in any future contract and suspending the operation of existing gold clauses by allowing all contract obligations to

be paid in paper currency.  *See* Joint Resolution of June 5, 1933 § 1, 48 Stat. 112, 113; *Normal v. Baltimore & Ohio RR. Co.,* 294 U.S. 240, 55 S.Ct. 407, 79 L.Ed. 885 (1935) (upholding Congress's Joint Resolution).  However in 1977, Congress amended the 1933 Joint Resolution to permit the use of gold clauses in contracts formed after the effective date of the 1977 amendment.  *See 216 Jamaica Ave., L.L.C. v. S & R Playhouse Realty Co.,*  540 F.3d 433 (6th Cir.2008).

**{¶23}** The gold clause in the current case is subject to the 1933 Congressional Joint Resolution and is, therefore, considered against public policy.  Further, for the years preceding the original 99-year term when Cuyahoga County was the lessee and Hudson the lessor, Hudson accepted the rent payable in currency, not gold.

**{¶24}**  Hudson's reference to the dormant gold clause in the original 1909 lease is without merit; the court's approval of the annual rent set at $65,325 is above the floor of the original rental rate.   Hudson's third assignment of error is overruled.

**{¶25}**  The judgment of the trial court is affirmed.

It is ordered that appellees recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said lower court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
PATRICIA ANN BLACKMON, J., CONCUR